CORDISH POWER PLANT
NUMBER TWO, LLC
601 East Pratt Street, 6th Floor
Baltimore, MD 21202,

      Plaintiff,

v.

SUSAN APLIN
309 Adams Street
Annapolis, MD 21403,

and

JOHN DOE(S),

      Defendants.

IN THE

CIRCUIT COURT

OF MARYLAND

FOR

BALTIMORE CITY

Case No.

## COMPLAINT

Plaintiff, Cordish Power Plant Number Two, LLC ("Plaintiff" or "Power Plant Two"), by its undersigned attorneys, individually and derivatively, brings this action against Defendant Susan Aplin ("Aplin"), individually and as a member of the board of directors of Bambeco Inc. ("Bambeco" or the "Company") and all other members of the board of directors of Bambeco at the times relevant to this Complaint ("John Doe(s)" and collectively with Aplin, the "Defendants" or the "Bambeco Board"). In support of this Complaint, Power Plant Two states as follows:

## INTRODUCTION

1.     This is a derivative and direct action. The derivative claim is asserted against all Defendants for breaching their fiduciary duties by authorizing and directing as board members, while Bambeco was deeply insolvent, that the net proceeds from the sale of Bambeco's business

and assets be distributed to insiders, including Susan Aplin, instead of being preserved for the benefit of all of Bambeco's creditors generally. This also is a direct action for which Power Plant Two individually seeks judgment against Susan Aplin individually for transactions she orchestrated as CEO of Bambeco with herself which resulted in fraudulent conveyances, including her cancellation of her personal debt to Bambeco without fair consideration at a time Bambeco was insolvent.

2.      The self-interested transactions described further below were undertaken to benefit insiders at the expense of creditor Power Plant Two, which holds an unsecured claim against the Company in an amount over $4 million.

## THE PARTIES

3.      Susan Aplin is a Maryland resident and co-founder and former chief executive officer (CEO) of Bambeco. Upon information and belief, Aplin served on the board of directors of Bambeco from its formation in 2008 through the sale of the company in October 2017.

4.      Power Plant Two is a Maryland limited liability company with an office located at 601 East Pratt Street, 6th Floor, Baltimore, Maryland 21202. Power Plant Two was, at the time of the Sale (defined below), the holder of the largest unsecured claim against Bambeco.

5.      Bambeco was formerly a Delaware corporation with its former principal place of business located in the State of Maryland. Prior to October 2017, Bambeco operated its business as an online retailer of sustainable home furnishings.

6.      Evergreen Enterprises, Inc. ("Evergreen") is incorporated in Virginia, and has a principal office located at 5915 Midlothian Turnpike, Richmond, VA 23225. Evergreen purchased all or substantially all of the business or assets of Bambeco on or about October 26, 2017.

2

7.   Each of the Defendants, at all relevant times, was a member of the board of directors of Bambeco.[1]

8.   As a creditor of an insolvent corporation, Power Plant Two has standing to bring derivative claims against directors on behalf of the Company for breaches of their fiduciary duties to the Company and derivatively, to its creditors. As a creditor of Bambeco, Power Plant Two has standing to bring this action against Aplin individually for her receipt of fraudulent conveyances from Bambeco in the form of payments and cancellation of her personal debt to Bambeco without fair consideration.

## JURISDICTION AND VENUE

9.   Jurisdiction in this Court is proper under MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b)(1), (2).

10.   Venue is proper in Baltimore City pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 6-201(a) because Defendants, in their capacity as members of the board of directors of Bambeco, directed and managed the Bambeco business while it formerly operated in Baltimore City.

11.   Aplin was a recipient of fraudulent transfers from Bambeco while employed in one of its offices located in Baltimore City.

---

[1] Power Plant Two does not know whether or not there were other directors, besides Aplin,  at the times relevant to the events complained of herein.   Cal Wheaton, of ABS Capital Partners, a private equity firm with an investment in Bambeco, was a director at one time but may or may not have been involved in the matters complained of in this Complaint. Accordingly, Power Plant Two reserves its right to amend the Complaint to include additional board members in the event discovery reveals their existence.

3

45671/0014-17086653v4
May 07, 2019



## FACTS

*Breach of Lease by Bambeco*

12.     On or about August 12, 2016, Bambeco as tenant and Power Plant Two as landlord entered into a lease (the "Lease") for approximately 16,000 square feet during the first eighteen (18) months, and 21,283 square feet during the following 66 months, of gross leasable space located at 621 E. Pratt Street, Baltimore, Maryland 21202 (the "Premises"), which is part of the retail and entertainment complex in the Inner Harbor area of downtown Baltimore known as Pier Four Office Building.

13.     Beginning in February 2017, Bambeco was in default under the Lease, and continues to be in default due to the failure to make payments to Power Plant Two as required by the Lease.  On or about June 9, 2017, Bambeco vacated the Premises.

14.     No payments have been made by Bambeco under the Lease since January 11, 2017.

15.     As of the date of this Complaint, Power Plant Two is owed pursuant to the Lease the amount of $1,516,446.90[2] plus sums due hereafter in the amount of $2,796,640.14 plus accrued interest from the date of this Complaint through the term of the Lease.  A statement detailing the amounts due and owing under the Lease is attached hereto as Exhibit A.

*The Sale of Bambeco's Assets to Evergreen and Bambeco's Insolvency*

16.     On or about October 26, 2017, Evergreen as purchaser and Bambeco as seller entered into an asset purchase agreement and bill of sale for the sale of Bambeco's business and substantially all of its assets for a purchase price of $1,200,000 in cash, plus assumed liabilities in the amount of $300,000 (the "Asset Purchase Agreement").

---

[2] This amount reflects the net amount due after taking into account a payment received from a source other than Bambeco.

4

17.     At the time of the sale, Bambeco was deeply insolvent, with liabilities in excess of $10 million, including the amounts owed to Power Plant Two.

18.     The Bambeco Board was fully aware of the insolvency of the Company and knew that they had fiduciary duties to conduct themselves in a manner that placed the rights and interests of creditors ahead of their own personal interests.

19.     At the time of the closing of the sale to Evergreen, the Bambeco Board knew that the net sale proceeds would be much less than the obligations of the company to its creditors.

20.     Instead of acting in a manner consistent with the best interest of creditors and their fiduciary obligations, the Bambeco Board used its control over Bambeco to serve their own personal interests, at the expense of general creditors, including Power Plant Two. Specifically, the Bambeco Board took the net sale proceeds for themselves.[3] In addition, Aplin treated her own personal obligations to Bambeco as if they were cancelled. As a direct result of these actions, Power Plant Two received none of the net sale proceeds on account of its claims against Bambeco under the Lease.

*Bambeco's Board Self-Dealing*

21.     Despite the fact that the proceeds were insufficient to pay Bambeco's creditors in full, the Bambeco Board authorized Aplin to apply the sale proceeds almost exclusively to pay herself and other insiders in complete disregard for Bambeco's debt to Power Plant Two.

22.     Upon information and belief, Aplin paid herself from the net sale proceeds amounts totaling more than $300,000.

---

[3] Although Cal Wheaton may or may not have been a Bambeco Board member at the time, upon information and belief he participated in the decision-making favoring insiders including his own firm, ABS Capital Partners.

45671/0014-17086653v4
May 07, 2019

23.     In addition, upon information and belief, the Bambeco Board authorized payments to ABS Capital Partners from the net sale proceeds in the total amount of $200,000.00

24.     At and prior to the time of the sale, Aplin owed a substantial debt to Bambeco under a Promissory Note dated January 22, 2016 in the principal amount of $322,266.00, in exchange for a loan from Bambeco in the same amount (the "Aplin Note") . The Aplin Note sets forth an interest rate of "2.50% per annum or 10% following the occurrence of . . . an Event of Default on the principal amount . . ." Aplin Note, p. 1.  A copy of the Aplin Note is attached as Exhibit B.

25.     The Aplin Note further provides the "entire unpaid principal balance on [the Aplin Note], together with any then accrued but unpaid interest thereon, shall be due and payable upon the closing of a Liquidity Event." *Id.*

26.     The sale of the Company qualified as a Liquidity Event under the Aplin Note, triggering the balance to become immediately due and owing.

27.     Upon information and belief, no payments were made by Aplin to Bambeco under the Aplin Note.  Instead of enforcing Aplin's obligations to Bambeco, the Bambeco Board, upon information and belief, treated the Aplin Note as if it were cancelled.  The Aplin Note was an asset of Bambeco with substantial value that should have been preserved and collected for the benefit of Bambeco's creditors, including Power Plant Two.

28.     Aplin acted in her capacity as officer, board member, and shareholder of Bambeco.

6



## COUNT I
### Setting Aside and Recovery of Fraudulent Conveyances
### Md. Comm. Law §§ 15-201 *et seq.*
### (against Susan Aplin)

29.　Power Plant Two repeats, realleges and restates the allegations contained in paragraphs numbered 1 through 28, as though set forth herein.

30.　At all times relevant to the facts and claims set out herein, Power Plant Two was a creditor of Bambeco.

31.　In 2017, upon information and belief, Aplin as insider and the person in control of Bambeco, facilitated and conveyed to herself from the sale proceeds realized by Bambeco more than $300,000 for purported compensation, including self-determined bonuses (the "Fraudulent Payments").

32.　When the sale occurred on or about October 26, 2017, the Aplin Note matured, triggering Aplin's obligation to pay Bambeco the amount of $354,492.60 (including interest at a rate of 10%) to become immediately due and payable.

33.　Upon information and belief, the Aplin Note was deemed by Aplin and/or the Bambeco Board to be cancelled (the "Aplin Note Cancellation").

34.　Upon information and belief, the Aplin Note was cancelled without any fair consideration being paid to Bambeco in exchange for the cancellation of this substantial debt.

35.　Because the Fraudulent Payments and the Aplin Note Cancellation were made at a time when Bambeco was insolvent and without fair consideration, under the Maryland Commercial Law Article, Subtitle 2 on Fraudulent Conveyances, these transactions constitute conveyances deemed to be fraudulent to Bambeco's creditors, without regard to the actual intent of Aplin or the Bambeco Board. *See* Md. Code Ann., Commercial Law, §§ 15-201(c), 15-204.

7

May 07, 2019

36. As a creditor with a matured claim at the time of the Fraudulent Transfers, Power Plant Two is entitled to have the Fraudulent Conveyances set aside, and has the right to levy on or garnish the Fraudulent Conveyances as if they were not made, to the extent necessary to satisfy Power Plant Two's claim against Bambeco.

WHEREFORE, Power Plant Two requests (i) entry of a money judgment against Aplin in the amount of the Fraudulent Conveyances, totaling no less than $700,000.00; (ii) an order imposing a lien on the Fraudulent Conveyances and directing Aplin to pay the sum of no less than $700,000.00 to Power Plant Two; and (iii) such other and further relief as is permitted under Md. Comm. Law §§ 15-201 *et seq.* and other applicable law.

## COUNT II
### Board of Directors Breach of Fiduciary Duties
### (against all Defendants)

37. Power Plant Two repeats, realleges and restates the allegations contained in paragraphs numbered 1 through 36, as though set forth herein.

38. As members of the board of directors of the Company, the Defendants owed to the Company fiduciary duties of good faith, care and loyalty.

39. After the Company became insolvent, the Company's creditors became the principal constituency injured by fiduciary breaches that diminished the value of the Company and wasted Company assets.

40. The Defendants had a general duty to seek prudently and loyally to maximize the value of the Company for the benefit of the Company's creditors, avoiding at all times self-dealing.

41. Because the Company was insolvent at all relevant times, Power Plant Two has standing as a creditor of the Company to enforce claims arising from breach of the Bambeco

45671/0014-17086653v4
May 07, 2019

Board's fiduciary duties by this derivative action under Count II of this Complaint for the benefit of the Company.

42.    The Defendants breached their duties of good faith, care and loyalty by approving (i) improper cash disbursements to Aplin through the Fraudulent Payments, and the payments totaling $200,000.00 to ABS Capital Partners, an insider of Bambeco which appears to have been involved in the decisions to pay the net sale proceeds to insiders instead of other creditors; and (ii) cancelling Aplin's debt to the Company under the Aplin Note, instead of requiring Aplin to pay the amounts due under the Aplin Note.

43.    In authorizing each of these actions, the Defendants placed the interests of insiders ahead of those of the Company's creditors and their conduct was so self-interested and one-sided that no prudent person could conclude that the Company received adequate consideration for the transfers, or that the actions or decisions were beneficial to the Company. The sole beneficiaries of each of these complained-of actions were insiders. These actions or decisions therefore constitute corporate waste and a breach of the directors' duties of good faith, care and loyalty.

44.    The Bambeco Board decisions to direct the net sale proceeds to their own benefit also violated Maryland law.  As a company whose business was the sale of inventory from stock, located in Maryland, Bambeco was a business subject to the Maryland Uniform Commercial Code-Bulk Transfers law. *See* Md. Code Ann., Com. Law Art. §§ 6-101 *et seq.* (the "Bulk Transfer Statute"). The Bulk Transfer Statute provides for the seller subject to the statute to comply with certain requirements, including if the sale proceeds are insufficient to pay creditors in full, to make pro rata distributions of the proceeds. *Id.* at § 6-106(3). The Bambeco

9

Board ignored this requirement and distributed the net sale proceeds solely for their own benefit, in breach of their fiduciary obligations to the Company.

45.    In authorizing these actions and decisions, the Defendants placed the interests of Aplin, who dominated and controlled the Board, and other insiders, including ABS Capital Partners, ahead of the interests of the Company. On information and belief, the Defendants undertook these actions and decisions in consultation with, at the direction of, and for the benefit of Aplin and ABS Capital Partners, in bad faith and in breach of their duties of good faith, care and loyalty to the Company and its creditors.

46.    In committing the breaches set out above, the Defendants acted carelessly, recklessly and/or were grossly negligent in the performance of their duties.

47.    As a direct and proximate result of the foregoing, Bambeco's creditors, including Power Plant Two, suffered substantial damages.

WHEREFORE, Power Plant Two respectfully requests (i) entry of a money judgment against the Defendants, in the amount of $1,000,000; and (ii) such other and further relief as is permitted under applicable law.

45671/0014-17086653v4
May 07, 2019

Dated:  May 7, 2019

Irving E. Walker
Brianne N. Lansinger
Cole Schotz P.C.
300 East Lombard Street, Suite 1450
Baltimore, Maryland 21202
Tel.: 410-528-2970
Fax:  410-528-9400
iwalker@coleschotz.com
blansinger@coleschotz.com

*Attorneys for Plaintiff, Cordish Power
Plant Number Two, LLC*

11

## EXHIBIT B

## APLIN NOTE

45671/0014-17086653v4
May 07, 2019

## EXHIBIT A

### SECURED PROMISSORY NOTE

-$322,266.00-                                                              Baltimore, Maryland

FOR VALUE RECEIVED, the undersigned, SUSAN APLIN ("*Borrower*") unconditionally promises as of January 22, 2016 to pay to BAMBECO, INC., a Delaware corporation ("*Lender*"), at its offices in Baltimore, Maryland (or at such other place as Lender may from time to time designate by written notice to Borrower), in lawful money of the United States, the principal sum of three hundred twenty two thousands and two hundred sixty six dollars and 00/100 ($322,266) (the "*Loan Amount*") with interest at the rate of (x) 2.50% per annum, or (y) 10% following the occurrence and during a continuance of an uncured Event of Default on the principal amount of this Note and accrued interest thereon remaining unpaid from time to time from the date hereof until such principal amount is fully repaid. Payments of principal and interest shall be payable as specified herein. Capitalized terms not otherwise defined herein shall be as defined in the Loan and Pledge Agreement of even date herewith between Borrower and Lender (the "*Loan Agreement*").

1. PAYMENT.

   1.1   Except as set forth in Section 1.2, below, payments of accrued interest shall be due and payable annually on each of the first three (3) anniversaries of the issuance hereof. Thereafter annual payments of accrued interest plus one-third (1/3) of the principal balance shall be due and payable annual for the next three (3) anniversaries of the issuance hereof; provided that the entire unpaid principal balance of this Note, together with any then accrued but unpaid interest thereon, shall be due and payable upon the closing of a Liquidity Event. Any payment shall be applied first to accrued interest and any balance to the reduction of principal.

   1.2   If Borrower is: (x) terminated as an employee of Lender without Cause (defined below) or resigns with Good Reason (defined below) then the payment terms set forth above in Section 1.1 will continue as scheduled; and (y) terminated as an employee of Lender with Cause or resigns without Good Reason then the payment terms set forth in Section 1.1 will be accelerated such that entire unpaid principal balance of this Note, together with any then accrued but unpaid interest thereon, shall be due and payable (i) on the date that is sixty (60) days after the effective date of termination of Borrower for Cause or (ii) on the date that is the first anniversary of the effective date of resignation of Borrower without Good Reason. As used herein the terms "*Cause*" and "*Good Reason*" have the respective meanings given thereto in Borrower's employment agreement with Lender as amended and in effect immediately prior to the effective date of Borrower's termination or resignation, as applicable.

2. PREPAYMENT. Borrower shall have the right to prepay all or any portion of the amount due under this Note upon fifteen (15) days' prior written notice to Lender. Any prepayment shall be applied first to accrued interest and any balance to the reduction of principal.

3. RECOURSE NOTE. Subject to Lender's discretionary rights to receive repayment in the form of pledged shares of Series B Participating Convertible Preferred Stock ("*Series B Preferred Stock*") or other consideration, this Note is a recourse obligation.

4. FORM OF PAYMENT. The Loan Amount is repayable in cash, but Lender and its Board of Directors will take into account at the time of repayment any request by Borrower to repay this Loan by the tendering of Series B Preferred Stock or other equity or other form of consideration, any decision to accept such alternative payment to be at the sole discretion of Lender's Board of Directors, it being agreed that: (x) if any Series B Preferred Stock is accepted as repayment for the Loan Amount (in whole or in part), then the applicable shares of Series B Preferred Stock each will be valued at $2.85 per share for such purposes; and (y) (x) if any Common Stock is accepted as repayment for the Loan Amount (in whole or in part), then the applicable shares of Common Stock each will be valued at $1.07 per share for such purposes.

5. EVENT OF DEFAULT. The entire unpaid principal amount of this Note and all accrued interest thereon shall, by declaration at the option of Lender (or without such declaration in the case of Insolvency), immediately become due and payable upon the occurrence of any Event of Default. Borrower shall be liable for any damages or expenses that Lender sustains by reason of any Event of Default, including without limitation all unpaid amounts due hereunder and reasonable costs of enforcement and collection of this Note, including reasonable attorneys' fees.

6. WAIVERS. Borrower waives presentment and demand for payment, notice of dishonor, protest and notice of protest of this Note, and shall pay all costs of collection when incurred, including, without limitation, reasonable attorneys' fees, costs and other expenses. The right to plead any and all statutes of limitations as a defense to any demands hereunder is hereby waived to the full extent permitted by law.

1

7.   SUCCESSORS.   This Note shall not be assignable by Borrower and shall bind Lender and Lender's successors and assigns.

8.   GOVERNING LAW.   This Note shall be governed by and construed and interpreted in accordance with the laws of the State of Delaware, without regard to that state's conflict of laws principles.

\* \* \* \* \*

2

124218310 v3

IN WITNESS WHEREOF, Borrower has executed this SECURED PROMISSORY NOTE as of the date first set forth above.

BORROWER

Printed Name: Susan Aplin

ACCEPTED AND AGREED:

BAMBECO, INC.

By: _____
       _____d C. Faint, Jr.
    Title: Chief Financial Officer

3

## EXHIBIT A

## STATEMENT OF POWER PLANT TWO CLAIM

45671/0014-17086653v4
May 07, 2019

**Bambeco, Inc.**
Tenant Summary
5/6/2019

I. Key Information

| | |
|---|---|
| Landlord | Cordish Power Plant Number Two, LLC |
| Tenant | Bambeco, Inc. |
| Lease Term | 9/1/16-8/31/23 |
| Date Tenant Vacated | 6/9/2017 |
| Current Occupancy Status of the Space | Vacant |
| Square Footage | 21,283 |

Unpaid Rent for the Period of 9/1/16 through 05/31/19

| | | |
|---|---|---|
| Rent and Additional Rent due under the Lease | | 1,563,935.53 |
| Interest on Unpaid Rent | | 405,593.30 |
| Late Charges | | 46,918.07 |
| Payments | | - |
| Total Past Due Rent | $ | 2,016,446.90 |

Unpaid Rent for the Period of 6/1/19 through 8/31/23

| | | |
|---|---|---|
| Rent and Additional Rent due under the Lease | | 2,796,640.14 |
| Interest on Unpaid Rent | | - |
| Late Charges | | - |
| Payments | | - |
| Total Past Due Rent | $ | 2,796,640.14 |

Legal Recovery

| | | |
|---|---|---|
| Legal Recovery - 12/21/18 | $ | (500,000.00) |
| **Total Due** | $ | 4,313,087.04 |